952 F.2d 1320
 60 USLW 2451, 21 U.S.P.Q.2d 1161
 Jacob H. MALTA and Malmark, Inc., Plaintiffs-Appellants,
v.
SCHULMERICH CARILLONS, INC., and Ronald O. Beach,
Defendants/Cross-Appellants,
and
Kelly-Michener, Inc., and the Handchime Company, Ltd., Defendants.
 Nos. 90-1250, 90-1269.
 United States Court of Appeals,
Federal Circuit.
 Dec. 26, 1991.
Suggestion for Rehearing In Banc
Declined March 9, 1992.
 
 Charles N. Quinn, of Miller & Quinn, Philadelphia, Pa., argued, for plaintiffs-appellants.
 Albert W. Preston, Jr., of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, Pa., argued, for defendants/cross-appellants. With him on the brief was John P. Donohue, Jr.
 Before RICH, NEWMAN and MICHEL, Circuit Judges.
 RICH, Circuit Judge.
 
 
 1
 Jacob H. Malta and Malmark, Inc. (Malmark) (collectively Malta) appeal in this patent case from the November 20, 1989 Order of the United States District Court for the Eastern District of Pennsylvania, granting judgment notwithstanding a jury verdict (JNOV) of non-infringement in favor of defendant Schulmerich Carillons, Inc. (Schulmerich). Malta v. Schulmerich Carillons Inc., 13 USPQ2d 1900 (E.D.Pa.1989). Schulmerich cross-appealed from the November 20 Order insofar as it denied Schulmerich's motion for JNOV that it is the equitable owner of the patent in suit and/or has a shop right under that patent. We affirm on the ground of non-infringement, and do not reach the cross-appeal.
 
 BACKGROUND
 A. The Patent in Suit
 
 2
 The patent in suit, U.S. Patent No. 3,941,082 ('082 patent) issued to Mr. Jacob Malta, is directed to improvements in the design of handbells, of the type used by music groups in churches, schools, and the like. Quoting the patent, "[a] chorus of players using a plurality of tuned bells may render any given tune which falls within the range of notes offered by the specific bells."
 
 
 3
 Handbells are generally made up of the bell itself, a handle attached to the closed end of the bell, and a clapper assembly pivotably mounted inside the bell and moving in a single plane. Attached to one end of the clapper assembly is a generally circular clapper or striker which, when the handbell is swung, strikes the bell to ring it.
 
 
 4
 The '082 patent discloses a number of improvements in handbell design. Most relevant to this suit is Malta's provision of a clapper mechanism for allowing the loudness of the bell to be quickly adjusted "on the fly," i.e., while the bell is being played. Specifically, it was known in the prior art to provide the peripheral surface of the clapper with portions of differing hardness so that, by rotating the clapper, one could change which portion of it struck the bell and consequently the loudness of the bell. However, the clapper could not be adjusted while the bell was being played. The '082 patent not only provided the clapper with striking surfaces of differing hardness around the periphery thereof, but also provided a detent mechanism which releasably locked the clapper in each desired position. In that way, the clapper could be rotated by hand while the handbell was being played.
 
 
 5
 The '082 patent discloses two different embodiments for the clapper. These two embodiments, shown in Figs. 3 and 7 of the '082 patent, are reproduced below.
 
 
 6
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 The first embodiment, shown in Fig. 3, has three opposing pairs of "striking surfaces." The first pair (66) consists simply of the hard rubber of which the clapper is made. The second pair (68) of striking surfaces has a slot cut into the rubber material. The third pair (70) has a piece of soft material such as felt attached to the clapper. These three pairs of striking surfaces provide a loud, medium, and soft sound, respectively.
 The second embodiment, shown in Fig. 7, has three "opposed pairs of buttons" (82) attached to the surface of the clapper. Each pair of buttons has a different degree of hardness so that, like the embodiment of Fig. 3, either a soft, medium, or loud sound can be produced, depending on which button pair is aligned to strike the bell. (The patent's term "opposed pairs" is somewhat confusing. The pairs are not opposed; rather, each pair has opposed buttons of the same hardness.)
 Claims 2 and 3 are relevant to this appeal. Claim 3 reads as follows:
 3. A handbell comprising in combination: a bell having a generally closed end; a clapper assembly adapted to be removably carried within said bell and centrally of the closed end thereof, said assembly comprising a clapper shaft having one end pivotally associated centrally of the closed end of said bell and carrying a clapper member at its free extremity, said clapper member comprising a generally circular striker assembly rotatably positioned substantially normal to said clapper shaft and including a plurality of striking buttons positioned in opposed pairs around the outer periphery thereof and wherein each pair of buttons has a different degree of hardness; means on said clapper assembly coacting with said rotatable striker assembly for permitting rotation of said striker assembly relative to said clapper shaft for selectively positioning desired pairs of buttons in striking relation to said bell; and detent means cooperating with said rotatable striker for releasably holding said striker assembly in any preselected position. [Emphasis ours.]
 Claim 2 is very similar to claim 3 and differs primarily in two respects: one, instead of the "coacting" means recited in claim 3, claim 2 requires an "indexing means" on the handle and the clapper assembly; and, two, instead of the "buttons" recited in claim 3, claim 2 requires "at least three opposed pairs of surface portions wherein each of said pairs has a different degree of hardness."
 B. The Proceedings in the District Court
 This case presents the familiar scenario of an employee who leaves his job and starts his own company, only to find himself later at legal odds with his former employer. Jacob Malta was employed by Schulmerich as its chief engineer from 1956 to 1973. In 1973, Mr. Malta left Schulmerich and, in 1975, formed Malmark. Malmark quickly grew and became the primary competitor of Schulmerich in the handbell business. The two companies currently supply about 95% of the handbell market.
 In 1985, Malta sued Schulmerich (and other defendants), alleging, among other things, that a line of Schulmerich handbells sold under the trademark "Quick-Adjust" infringes claims 2 and 3 of the '082 patent.[1] The Quick-Adjust handbells are on-the-fly adjustable handbells which have striking surfaces similar to Fig. 3 of the '082 patent, with pairs of opposed striking surfaces of different hardness by virtue of felt coverings and/or slots or holes formed in the hard rubber clapper.
 With respect to claim 3, Schulmerich denied infringement primarily on the ground that its Quick-Adjust handbells do not have a striker assembly with "a plurality of striking buttons positioned in opposed pairs around the outer periphery thereof and wherein each pair of buttons has a different degree of hardness." Schulmerich argued that the '082 patent uses the word "buttons" only in conjunction with the embodiment of Fig. 7, and that the Quick-Adjust handbells do not have such buttons. In response, Malta argued, and presented evidence to show, that the word "buttons" was not limited to the embodiment of Fig. 7, but should be construed broadly to literally include striking surfaces such as those of Fig. 3 of the '082 patent and those of the Quick-Adjust handbells.
 In addition to denying liability on the ground of non-infringement, Schulmerich also contended that Jacob Malta had actually invented the subject matter of the '082 patent while employed at Schulmerich. Consequently Schulmerich argued that it was either the equitable owner of the '082 patent (due to Mr. Malta's contractual obligation to assign to Schulmerich all inventions made while working for Schulmerich), or at the very least had a shop right in the patented subject matter.
 The case was tried before a jury. Malta requested and obtained a jury instruction not only on literal infringement but also on the doctrine of equivalents. In particular, the judge instructed the jury that
 Infringement under the doctrine of equivalents may exist if the accused handbells perform substantially the same function in substantially the same way so as to obtain substantially the same results as the claimed invention.
 * * * * * *
 In applying the doctrine of equivalents, remember that infringement requires that each and every element of an asserted claim or the equivalent of the element must be present in the accused device.
 The jury was given special interrogatories asking whether the Quick-Adjust handbells infringed claims 2 and 3 of the '082 patent, either literally or under the doctrine of equivalents. In response, the jury found, for reasons unrelated to any issue here, that claim 2 was not infringed, but that claim 3, while not literally infringed, was infringed under the doctrine of equivalents. The jury was also given special interrogatories concerning Schulmerich's claim of either equitable ownership or shop right, and found that Schulmerich had neither. The jury awarded damages in the amount of $950,000.
 Schulmerich moved for JNOV on the grounds that the evidence was not sufficient to support either the finding of infringement under the doctrine of equivalents or the finding that Schulmerich had neither equitable ownership of, nor a shop right in, the '082 patent.
 Approximately seven months later, while decision on the JNOV motion was still pending, this court decided the case of Lear Siegler Inc. v. Sealy Mattress Co., 873 F.2d 1422, 10 USPQ2d 1767 (Fed.Cir.1989). In Lear Siegler, this court reversed a jury's finding of infringement under the doctrine of equivalents, stating, among other things:
 Absent the proper Graver Tank[2] context, i.e., a showing of how plaintiff compares the function, means, and result of its claimed invention with those of the accused device, a jury is more or less put to sea without guiding charts when called upon to determine infringement under the doctrine. While we do not doubt the ability of a jury to decide the factual issue of equivalence, to enable the jury to use its ability, Nestier[3] requires that the three Graver Tank elements [substantial identity of function, way and result] must be presented in the form of particularized testimony and linking argument.
 873 F.2d at 1425-26, 10 USPQ2d at 1770. Schulmerich brought Lear Siegler to the judge's attention in a letter citing the case in support of its motion for JNOV of noninfringement.
 The judge upheld the jury's verdict as to the equitable ownership/shop right question, but agreed that the evidence was insufficient to support the finding of infringement under the doctrine of equivalents. The judge, relying heavily on the Lear Siegler decision, found that Malta had not provided "particularized testimony and linking argument" as to each of the function/way/result prongs of the tripartite Graver Tank equivalency test and granted JNOV in favor of Schulmerich. He set aside the jury verdict and refused to enter a permanent injunction against Schulmerich.
 Malta appeals from the grant of JNOV of non-infringement, and Schulmerich cross-appeals from the denial of its JNOV motion based on the equitable ownership/shop right defense.
 OPINION
 A. Sufficiency of the Motion for Directed Verdict
 Before reaching the merits of the infringement question, we address a procedural issue raised by Malta. Malta argues that Schulmerich's motion for a directed verdict was insufficient to support the JNOV motion that was later granted by the district court.
 Rule 50(a) of the Federal Rules of Civil Procedure states that a "motion for directed verdict shall state the specific grounds therefor." Fed.R.Civ.P. 50(b) allows for entry of JNOV only "in accordance with the party's motion for a directed verdict." Orthokinetics Inc. v. Safety Travel Chairs Inc., 806 F.2d 1565, 1579, 1 USPQ2d 1081, 1091 (Fed.Cir.1986) (Ground on which JNOV motion is based must have been asserted in a motion for directed verdict. Issue of willfulness of infringement is not the same thing as issue of infringement).
 The record shows that at the close of Malta's case at the trial in the district court, Schulmerich's counsel moved orally for directed verdict as follows:
 [V]ery briefly we move for a directed verdict on the issue of noninfringement of claims 2 and claims 3 of the 082 patent on the grounds that the evidence is insufficient.
 After the close of all the evidence, counsel stated that this motion was renewed.
 Malta argues that such general allegations of insufficiency of the evidence are insufficient to support a JNOV motion that was granted because of a lack of particularized function/way/result testimony and linking argument. We disagree. As is clear from the infringement discussion in section B, infra, the district court correctly granted Schulmerich's motion for JNOV because Malta failed to present sufficient evidence to the individual function/way/result elements of the Graver Tank equivalency test. That is to say, the evidence of infringement of claim 3 was insufficient, which was the basis of the motion for directed verdict.
 The trial judge's initial order filed Nov. 21, 1989, began by stating "Because the evidence does not prove the essential elements of plaintiffs' case, the [defendants'] motion for judgment n.o.v. must be granted." The next day the judge signed another order supplementing the first order saying it "is reopened and judgment is hereby entered for defendant as if the verdict requested at the close of the evidence had been directed. Fed.R.Civ.P. 50(b)."
 Clearly the trial judge had no doubt, nor do we, that the ground stated in support of the first motion for directed verdict and in support of the motion for JNOV were one and the same. The latter therefore was supported as required by Fed.R.Civ.P. 50(a) and (b). Malta's argument to the contrary is without merit.
 B. Infringement and the Doctrine of Equivalents
 To convince this court that a trial judge erred in granting a motion for JNOV, an appellant must show that there was substantial evidence to support the jury's factual findings, and that those findings can support the jury's legal conclusion. Orthokinetics, 806 F.2d at 1571, 1 USPQ2d at 1085.
 In order to prove infringement under the doctrine of equivalents, a patentee must show that the accused device performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed device. Graver Tank, 339 U.S. at 608, 70 S.Ct. at 856, (85 USPQ at 330). The "substantially the same way" prong of this test may be met if an equivalent of a recited limitation has been substituted in the accused device. See Corning Glass Works v. Sumitomo Elec. U.S.A. Inc., 868 F.2d 1251, 1259, 9 USPQ2d 1962, 1967 (Fed.Cir.1989). The issues of infringement and of equivalency are issues of fact. Sun Studs Inc. v. ATA Equip. Leasing Inc., 872 F.2d 978, 986, 10 USPQ2d 1338, 1345 (Fed.Cir.1989).
 As an initial matter, Malta contends that the trial judge erred in his grant of JNOV when he stated that a patentee
 must substantiate all three aspects of equivalency, per Graver Tank, as to each limitation of a claim in order to establish equivalence between claim and accused device.
 This court has never adopted the three prong approach to determining equivalency of a limitation. In Pennwalt Corp. v. Durand-Wayland Inc., 833 F.2d 931, 4 USPQ2d 1737 (Fed.Cir.1987) (in banc), cert. denied, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988), this court upheld a finding of no infringement involving the doctrine of equivalents because the patentee did not establish the presence, in the accused device, of every claim element[4] "or its substantial equivalent." Pennwalt, 833 F.2d at 935-36, 4 USPQ2d at 1740-41 (claimed function found missing). Pennwalt did not set forth a test as to how one proves that an element in an accused device is the "substantial equivalent" of a claim limitation directed to a single element in dispute--here the "buttons."
 In the subsequent Corning Glass case, 868 F.2d at 1260, 9 USPQ2d at 1968-69, we stated
 This court has not set out in its precedent a definitive formula for determining equivalency between a required limitation or combination of limitations and what has been allegedly substituted therefor in the accused device. Nor do we propose to adopt one here. We note that the district court resolved the question by comparison of the function/way/result of the substitution with the function/way/result of the limitation in the context of the invention; that is, the court made a subsidiary analysis comparable to the overall function/way/result analysis mandated for determining infringement under the doctrine of equivalents.
 * * * * * *
 The district court's "function/way/result" equivalency analysis with respect to a claim limitation appears to be a helpful way to approach the problem and entirely in accord with the analysis actually made in Graver Tank....
 Thus, while comparison of function/way/result is an acceptable way of showing that structure in an accused device is the "substantial equivalent" of a claim limitation, it is not the only way to do so, and to this extent, the trial judge in the present case did err. However, this error is harmless.
 How equivalency to a required limitation is met necessarily varies from case to case due to many variables such as the form of the claim, the nature of the invention defined by it, the kind of limitation that is not literally met, etc. For example, the fact situations in Corning Glass and in this case are simply not comparable, yet application of the doctrine must be adapted to each, which is why the Corning panel declined to propose a formula of general applicability for determining equivalency to a claim limitation. See Hughes Aircraft Co. v. United States, 717 F.2d 1351, 1361, 219 USPQ 473, 480 (Fed.Cir.1983) ("The doctrine is judicially devised to do equity").
 Malta's proofs lack evidence to prove either that all three prongs of the Graver Tank test are met or that the "buttons" limitation was met equivalently. The evidence Malta principally points to is the following two portions of the testimony of Jacob Malta (emphasis ours):
 Q: Would you make that clear as to what the structure is in the Schulmerich bell that corresponds to the buttons that are recited in the claim?
 A: All right. The structure is these portions of the clapper, in this case the opposed felt pieces, and adjacent thereto on each side these elliptical spots of green, indicating that there are additional pairs of opposed striking surfaces.
 Q: Striking surfaces. Would you go on with your explanation of how the portion illustrated in color in the exhibit corresponds to the claim language?
 A: Right. The--as I described, we have a plurality of buttons, there's three sets, buttons or the equivalent thereof, and they are in opposed pairs around the periphery. We've described how they are related to these indexing slots in the underside of the brass clapper insert, and each pair has a different degree of hardness, we've described that. Here again we have felt which produces a soft impact sound. Here, this would be in relation to this slotted portion here where we have a slot in the core and at 180 degrees another slot, that would be the medium impact position. And then the lowermost one would be the--this one opposed to this where we have a solid plastic material in the impact plane producing a brilliant sound.
 and:
 Q: And Claim 3 includes as a part of the striker assembly the phrase, "A plurality of striking buttons positioned in opposed pairs around the outer periphery thereof wherein each pair of buttons is a different degree of hardness," correct?
 A: That's right.
 Q: Do you find those buttons in [the accused] structure?
 A: Yes, there are buttons per se here, the felt, the opposed felt certainly are visible buttons. The opposed locations or surfaces which are related to these long slots are likewise buttons and the opposed pair of solid portions again are buttons.
 Q: Do you mean they're buttons or function like buttons?
 A: They function like buttons....
 This court in Lear Siegler, following Nestier, held that a patentee must prove substantial identity as to each of the function, way, and result prongs of the doctrine of equivalents. Lear Siegler, 873 F.2d at 1425, 10 USPQ2d at 1770, Nestier, 739 F.2d at 1579-80, 222 USPQ at 750. As the court noted in Lear Siegler, such proof is necessary to prevent the jury from being "put to sea without guiding charts," and from determining infringement by simply comparing the claimed invention and the accused device "as to overall similarity." Lear Siegler, 873 F.2d at 1426-27, 10 USPQ2d at 1770-71.[5]
 With this requirement in mind, we agree with the district court that the evidence was insufficient to support a finding of infringement under the doctrine of equivalents. Malta's brief to this court discusses the above testimony at great length, explaining how this testimony informs the jury of the function, way, and result achieved by the accused device. However, what is clearly lacking in that testimony is a sufficient explanation of both why the overall function, way, and result of the accused device are substantially the same as those of the claimed device and why the plastic/slotted plastic/felt arrangement is the equivalent of the claimed buttons limitation. Mr. Malta's offhand and conclusory statements ("buttons or the equivalent thereof" and "They function like buttons") are not sufficiently particularized evidence. In short, with little guidance, the jury was left to its own imagination on the technical issue of equivalency.
 There is no other evidence in the case which provides the necessary "substantial evidence" on the issue of infringement under the doctrine of equivalents. The '082 patent itself has the following to say about the two embodiments of Figs. 3 and 7 (Col. 4, 11. 46-48):
 Another form of clapper is depicted in Fig. 7. It has all of the advantages of the one shown in Fig. 3 but varies in design, flexibility and simplicity.
 Thus, while the two embodiments are described as being alternatives to each other, they are not equivalent in "way". Further, the patent specifically uses the term "striking surfaces" with respect to the embodiment of Fig. 3, but uses the different term "buttons" with respect to Fig. 7. The claims of the patent maintain this distinction; claim 2 describes the surface of the clapper using the broad term "surface portions," while claim 3 uses the narrower term "buttons." Though application of the doctrine of equivalents extends the protection of the patent beyond the literal words of the claims, it is not proper "to erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1532, 3 USPQ2d 1321, 1324 (Fed.Cir.1987). In the present case, where Malta employs a broad term in one claim, but a narrower term, used with respect to only one embodiment in the specification, in another claim, the implication is that infringement of the second claim can be avoided by not meeting the narrower term.
 In sum, we agree with the district court that Malta failed to present evidence sufficient to support a finding of infringement of claim 3 under the doctrine of equivalents, and we therefore uphold the court's grant of JNOV.
 C. "Retroactive Application of Lear Siegler"
 Malta argues that it is improper to retroactively apply the holding of Lear Siegler to this case, citing Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), since Lear Siegler allegedly established a new principle of law. However, as noted in the previous two sections, Lear Siegler merely requires that a patentee prove all elements of his case, which, with respect to the doctrine of equivalents, means that a patentee must prove that each prong of the Graver Tank equivalency test is met. While Lear Siegler set forth this requirement in language particularly suitable to the present jury case, we do not agree that Lear Siegler established any new principle of law. Reading the opinion is enough to show that the district court was right in saying (n. 7): "Lear Siegler merely repeats in so many words the explication of Nestier." Nestier was decided in 1984. This case was not tried until 1988. There has been no retroactive application of law.
 D. Schulmerich's Cross-Appeal
 Having upheld the district court's determination of non-infringement, we need not and do not reach the issues of equitable ownership and shop right raised in Schulmerich's cross-appeal. Schulmerich's brief states:
 If this Court affirms the trial court in relation to the grant of JNOV due to the failure of proof at trial by Malta/Malmark, it need not consider Schulmerich's cross-appeal on the issue of co-ownership.
 E. The Dissent
 With all respect to the dissent, we are not rejecting a jury verdict or making a de novo determination of infringement. We are reviewing the district court's judgment notwithstanding the jury verdict, the district court which tried the case, heard all the evidence including Mr. Malta's self-serving testimony and opinions about claim construction together with his elaborate illustrations so laboriously listed in the dissent. What we are affirming is the judgment of the fully informed district judge based on his holding that the evidence was insufficient to support a finding of infringement under the doctrine of equivalents, a doctrine the application of which enlarges the coverage of the patent beyond what is defined in the claims. We are following the instruction of the Supreme Court in Graver Tank, 339 U.S. at 610, 70 S.Ct. at 857, referring to the application of the doctrine, that:
 It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous.
 In essence, what we are affirming is the district court's decision that, in view of all the evidence, this is not a case in which the doctrine of equivalents can be applied, that being the only basis on which Malta can contend that his patent is infringed. The district court's detailed opinion of November 21, 1989, discussed the doctrine of equivalents and its proper application at great length and came to the correct conclusion that "Plaintiffs offered no more than brief, conclusory evidence that the Schulmerich bell contains the equivalent of the disputed buttons." That is what we are reviewing, not the jury verdict, and we will not disturb it. For this court's most recent views on application of the doctrine of equivalents, see London v. Carson Pirie Scott & Co., 946 F.2d 1534, 20 USPQ2d 1456 (Fed.Cir.1991).
 CONCLUSION
 For all of the above reasons, the judgment of the district court is affirmed.
 AFFIRMED.
 MICHEL, Circuit Judge, concurring.
 I agree that the district court's grant of JNOV to defendants must be affirmed, and I join in Judge Rich's opinion. I enter this concurrence only to emphasize that our ground of decision is required implicitly by Graver Tank and Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 828 (1950) and explicitly by Lear Siegler, Inc. v. Sealy Mattress Co., 873 F.2d 1422, 10 USPQ2d 1767 (Fed.Cir.1989). For me what is fatal in this record is the failure of Mr. Malta to separate and explicate his comparative analysis of "way" from his comparison of "function" and "result," and to substantiate it. All three requirements of Graver Tank were discussed together, with only two fleeting, conclusory and inferential references to way. Consequently, there was insubstantial evidence of infringement under the doctrine of equivalents as to way, and therefore the verdict of infringement under the doctrine cannot be sustained.
 I. THE LAW
 In Lear Siegler, 873 F.2d at 1425-26, 10 USPQ2d at 1770, this court clarified a specific requirement that must be met before the question of infringement under the doctrine of equivalents may be submitted to the trier of fact for decision. To survive a motion for a directed verdict or a JNOV, a patentee must present "substantial evidence" comparing the claimed and accused inventions to one another as to each of the three aspects of equivalency set forth in Graver Tank, 339 U.S. at 608, 70 S.Ct. at 856, 85 USPQ at 330--"function," "way," and "result." Lear Siegler, 873 F.2d at 1425-26, 10 USPQ2d at 1770. In Lear Siegler, we said
 [t]he party asserting infringement must present "evidence and argument concerning the doctrine and each of its elements." ... While we do not doubt the ability of a jury to decide the factual issue of equivalence, to enable the jury to use its ability, Nestier requires that the three Graver Tank elements must be presented in the form of particularized testimony and linking argument.
 873 F.2d at 1425-26, 10 USPQ2d at 1770 (citing Nestier Corp. v. Menasha Corp.-Lewisystems Div., 739 F.2d 1576, 1579, 222 USPQ 747, 749 (Fed.Cir.1984) (5-judge panel), cert. denied, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985) (emphasis in original)). Thus, under Nestier Corp. and Lear Siegler, substantial evidence of comparison as to function, way, and result is required as part of the patentee's prima facie case of infringement under the doctrine. Therefore, if the comparison evidence is not substantial, the issue may not be submitted to the jury. Or, if the trial court erred and the jury was allowed to decide the issue and returned a verdict for patentee, JNOV must be granted.
 We have also held that the comparison as to each Graver Tank element must be made "explicitly" and "separately." Lear Siegler, 873 F.2d at 1425-26, 10 USPQ2d at 1770. Consequently, a jury verdict of infringement under the doctrine can only survive a motion for JNOV if substantial evidence was presented that explicitly and separately compares the function/way/result of the accused device with the function/way/result of the claimed invention to show that they are substantially the same. That was not done here as to way.
 Compliance with Lear Siegler is a question of law, which we review de novo. On a motion for directed verdict or JNOV, the trial judge must decide such an issue of law by assessing whether evidence of comparison that is substantial, separate and explicit was introduced by the patentee as to each aspect of infringement by equivalents. See Senmed Inc. v. Richard-Allan Medical Indus., 888 F.2d 815, 818, 12 USPQ2d 1508, 1511 (Fed.Cir.1989).
 II. THE LAW APPLIED TO THIS CASE
 The trial judge conducted such an assessment here. In reviewing this legal issue de novo, we decide he was correct in concluding the evidence was not substantial.
 As the dissent details, in the instant case extensive evidence was presented about how the striking surfaces of the accused bell work. The jury was not separately and explicitly told, however, that drilling slots behind striking surfaces on a clapper made of the same plastic material is an equivalent "way" compared to attaching striking buttons made from different materials. To be sure, the jury was told and shown that the "function" and "result" of their clappers striking the bells were the same, and indeed these two aspects of equivalency are all but uncontested. And, while explaining the similarity of function and result, Mr. Malta may have briefly implied that the way was also essentially the same, the jury certainly was not told how and why that was so. In other words, plaintiff's separate and explicit comparison evidence was sufficient to establish only two of the three Graver Tank requirements. The testimony as to "way" was not substantial. Nor was it separate and explicit. Rather, it was brief, intermingled, inferential and conclusory. Because Lear Siegler clearly requires separate, explicit and substantial comparison evidence as to all three requirements, the case should not have been submitted to the jury, and thus the jury verdict cannot stand.
 III. THE DISSENT
 The dissent suggests that the majority has added "a new requirement of proof of equivalency: proof of not only the three Graver Tank 'prongs' of 'function, way, and result', but also a fourth prong of 'why'." Such a characterization of the majority's holding is inaccurate. Because often substantial proof of equivalence of "way" can be made only by an explanation of "how and why," the apparently separate requirement of proof of "why" is actually only an elaboration on the requirement of equivalence as to "way."
 To my mind, it is clearly no answer to point, as does the dissent, to the great quantity of evidence on the general operation of each of the two bells at issue in this case, i.e., the commercial embodiment of the claimed bell and the accused bell. No amount of purely descriptive evidence about either can suffice, absent separate, explicit and substantial comparison evidence that the clapper "striking surfaces" work in the same "way" as the "buttons."
 That the instructions did not contain erroneous statements of law, were reasonably comprehensive, and went unchallenged is immaterial. Defendants did move for a directed verdict, both at the end of plaintiffs' case and again at the close of all the evidence. The stated ground was insufficiency of the evidence on infringement. No reason has been advanced why they should also be required to make the vain gesture of objecting to a facially proper charge of infringement by equivalents. In any event, Fed.R.Civ.P. 50(b) explicitly states that whenever a motion for directed verdict is denied, "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." As was noted earlier, compliance with Lear Siegler is a legal question.
 Moreover, Lear Siegler is based on the very premise that sufficiency of instructions cannot cure an insufficiency of proof as to the three Graver Tank requirements. The reason we do not allow curing by instructions is that even with perfect jury instructions, determining infringement by equivalents would still be guesswork for a jury unless it is given separate, explicit and substantial evidence of comparison as to each requirement of Graver Tank. After all, such comparisons are what infringement by equivalents is all about. As the district court noted, the danger that Lear Siegler, building directly on Nestier Corp., is designed to prevent is that of the doctrine of equivalents becoming "a result oriented catch-all." Malta v. Schulmerich Carillons, Inc., 13 USPQ2d 1900, 1903 (E.D.Pa.1989).
 The simplicity of the bells, so emphasized by the dissent, is not relevant either. In Lear Siegler, the devices at issue--mattress springs--were equally simple and in no manner implicated complex technology. However, the rule of Lear Siegler is a prophylactic rule of general applicability. As such, it must cover the whole range of infringement cases, many of which do indeed involve complex technology. I would agree, though, that the more complex the technology, the greater the need for the rule. But that is not to say there can be any case where this rule does not apply. In requiring sufficient evidence on each aspect of equivalence, Lear Siegler merely makes explicit what Graver Tank implied.
 Nor is it relevant that, as the dissent notes, slots in the clapper material were well known in the prior art, for the obviousness of the "way" cannot explicate for judge or jury that it is equivalent, i.e., substantially the same, much less how and why. That clapper surfaces with slots were known as an alternative to buttons of differing materials does not necessarily make them an equivalent. In fact, obviousness is simply non-probative of the three-part test of equivalence.
 Contrary to the dissent, the rule of Lear Siegler does not implicate the jury's prerogatives, under the Constitution, the case law, the Federal Rules of Civil Procedure, or otherwise. It simply addresses whether the evidence is sufficient to permit submission of the issue to the jury at all. It is thus a rule that restricts judges, not jurors.
 The dissent also suggests that Schulmerich's failure to request jury instructions on the rule of Lear Siegler means Schulmerich waived the protections of the rule. As a rule that restricts judges and not jurors, its purpose is to establish when the issue of infringement by equivalents may be given to the jury. It is thus not subject to waiver because of suggested jury instructions, or the lack thereof.
 Finally, contrary to the suggestion of the dissent, in my view there is not a genuine issue of retroactive application of new law. While Judge Rich's opinion relies primarily on statements in Nestier Corp., decided before the trial of this case, as first setting forth the requirement restated in Lear Siegler, decided after this trial, to overcome the dissent's argument on retroactivity, there is a simpler answer. I submit that requiring separate, explicit and substantial comparison evidence of each of the three Graver Tank aspects of equivalency has been the law at least since 1950 when Graver Tank itself was decided. If Lear Siegler added gloss thereto, it was on peripheral points not dispositive here, such as the requirement of "testimony" (as opposed to other forms of evidence) and "linking argument" (which, being only attorney assertions, is of course not evidence at all).
 IV. CONCLUSION
 Generally speaking, both the purpose and effect of the rule of Lear Siegler are to minimize the risk that a jury will find infringement under the doctrine of equivalents merely because one or two of the three Graver Tank requirements is met, ignoring the other(s) or blindly assuming the other(s) must be met, too. Thus, Lear Siegler requires that before a case may be submitted to a jury, a patentee's proof must include substantial evidence of separate and explicit comparison of the claimed and accused devices as to each of the three Graver Tank requirements. A case based solely on descriptive evidence, no matter how extensive, may not go to the jury. Nor may a case lacking separate, explicit and substantial evidence on each of the Graver Tank requirements of equivalence.
 Here, no separate and explicit comparison evidence at all was presented as to whether, how and why the clapper surfaces of the same plastic material with slots drilled behind them operated in the same "way" as the striking buttons made of materials of different hardness. Instead, brief, inferential and conclusory references to way were buried in answers dealing primarily with function and result. That is not substantial evidence and the jury certainly would not appreciate it as evidence of way. Thus, an error of law occurred in submitting the case to the jury.
 I join Judge Rich's opinion affirming the district court's judgment of no infringement despite the verdict. I set forth these concurring views in order to clarify Lear Siegler.
 PAULINE NEWMAN, Circuit Judge, dissenting.
 I respectfully dissent, for neither the law nor the record provides a basis for overturning the jury's verdict. Upon full trial, upon agreed and correct jury instructions, upon substantial evidence in the form of testimony and exhibits and demonstrations, a reasonable jury could have reached the verdict of infringement reached by this jury. That ends our review. With all respect to my colleagues on this panel, their rejection of the jury verdict and de novo determination of the factual issue of infringement is contrary to the law governing appellate review of jury verdicts.
 The questions of infringement and equivalency were decided by the jury. See Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1930) ("Issues that depend on the ... weight of evidence are to be decided by the jury."); Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 524, 45 S.Ct. 169, 170, 69 L.Ed. 419 (1925) ("the weight and probative value of evidence are to be determined by the jury and not by the judge"). A reasonable jury, correctly instructed, viewing all the evidence presented at trial of the case here under review, could have found infringement by equivalency. Our role is appellate review, not trial de novo. See Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 112-14, 83 S.Ct. 659, 662-63, 9 L.Ed.2d 618 (1963) (the appellate court improperly invaded the jury's function and province in its holding that the evidence at trial of a causal connection fell short of that required for the consideration of a jury).
 As the Court stated in Anderson v. City of Bessemer City, 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985), the trial on the merits is "the 'main event' ... rather than a 'tryout on the road' ", quoting Wainwright v. Sykes, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977). When the relationship between trial and appellate tribunals is distorted, the consequences disserve the public and the courts:
 The principal consequences of broadening appellate review are two. Such a course impairs the confidence of litigants and the public in the decisions of the trial courts, and it multiplies the number of appeals.
 C. Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn.L.Rev. 751, 779 (1957).
 * Appellate Review
 The standard of judicial review of jury verdicts is established. Sometimes described as a "reasonable jury" standard and sometimes as a "substantial evidence" standard, the challenger must show that there was not an evidentiary basis for the verdict. As discussed by the Court:
 But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.
 Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946). This standard has its roots in the Constitution and in tradition, for the principles underlying the jury right require that the jury verdict receive judicial deference.
 Many illustrations of the requisite standard of appellate review of jury verdicts appear in the precedent of the Third Circuit.[1] E.g., Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir.1979) (en banc ) ("Our limited function at this point is to ascertain from review of the record whether there is sufficient evidence to sustain the verdict of the jury on this issue"); Dawson v. Chrysler Corp., 630 F.2d 950, 959 (3d Cir.1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981) (the jury verdict must be sustained unless the record "is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief"), quoting Denneny v. Siegel, 407 F.2d 433, 439 (3d Cir.1969).
 Federal Circuit decisions have well illustrated this standard. E.g., Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1571, 1 USPQ2d 1081, 1085 (Fed.Cir.1986):
 To convince this court that a trial judge erred in granting a motion for JNOV, an appellant need only show that there was substantial evidence to support the jury's findings and that those findings can support the jury's legal conclusion.
 Also, e.g., DMI, Inc. v. Deere & Co., 802 F.2d 421, 425, 231 USPQ 276, 278 (Fed.Cir.1986) (to reverse the jury, the findings must not be supported by substantial evidence); Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 619, 225 USPQ 634, 636 (Fed.Cir.), cert. dismissed, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985) (determining from the evidence as a whole whether there was substantial evidence in support of the jury verdict); Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), cert. denied, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984) ("only when the court is convinced upon the record before the jury that reasonable persons could not have reached a verdict for the non-mover, should it grant the motion for JNOV.")
 On judicial review following a duly made motion for judgment n.o.v., the evidence must be viewed and reasonable inferences drawn in the light most favorable to the party with the jury verdict. Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); Danny Kresky Enterprises Corp. v. Magid, 716 F.2d 206, 209 (3d Cir.1983); Chuy, 595 F.2d at 1273. The reviewing court is not free to reweigh the evidence or substitute its own judgment for that of the jury, Blair v. Manhattan Life Ins. Co., 692 F.2d 296, 300 (3d Cir.1982), or to pass on the credibility of witnesses. Kinnel v. Mid-Atlantic Mausoleums, Inc., 850 F.2d 958, 961 (3d Cir.1988).
 Those functions are assigned to the fact-finder, in this case the jury. Our function is to determine only whether there is evidence upon which the jury could properly return a verdict, viewing the evidence most favorably to Kinnel the non-movant, and giving Kinnel the benefit of all reasonable inferences.
 Id. at 961-62.
 The Federal Circuit is in accord. E.g., Orthokinetics, 806 F.2d at 1572-73, 1 USPQ2d at 1085-86 (it is "a misunderstanding of our appellate role" for this court to determine what is supported by the evidence as a whole, rather than whether the evidence the jury could have believed was substantial); Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983) (the appellate court must consider all the evidence in the light most favorable to the non-movant, must not determine the credibility of witnesses, and must not substitute its choice for that of the jury in finding facts, drawing inferences, or deciding between conflicting elements in the evidence). These are functions of the trier of fact, not the reviewing court.
 These precepts are not here followed. The panel majority has rejected the jury verdict, although it is supported by substantial evidence and could clearly have been reached by a reasonable jury. Indeed, the panel majority has ignored much of the evidence that was presented at trial; see Part B post. The majority instead imposes the new requirements of "particularized testimony and linking argument" that were set forth in Lear Siegler, Inc. v. Sealy Mattress Co., 873 F.2d 1422, 10 USPQ2d 1767 (Fed.Cir.1989). These requirements, which apply solely to jury trials, were not referred to at the trial, for Lear Siegler was decided eight months after this jury verdict was rendered.[2]
 These new requirements are not trivial. They demand a certain stylized testimony and specified attorney argument when trial is to a jury. As compared with trial to the bench, these requirements must be fulfilled no matter how simple the invention. The court holds that if this extra testimony and extra argument are omitted, the case can not go to the jury at all--no matter whether the evidence might suffice were the trial to the court. The panel majority, applying Lear Siegler to remove this case from the jury, has invoked a new requirement of proof of equivalency: proof of not only the three Graver Tank "prongs" of "function, way, and result", but also a fourth prong of "why".
 It is contrary to due process to revise the evidentiary and procedural burdens of the trial after the jury's verdict has been rendered. Were these new criteria for jury trials indeed required to be applied to this case, then in the interest of justice a new trial, not reversal of the jury verdict, is the appropriate remedy. See Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216 n. 4, 67 S.Ct. 752, 755 n. 4, 91 L.Ed. 849 (1947) (court always has discretion, when justice requires, to order a new trial); Roebuck v. Drexel University, 852 F.2d 715, 735-36 (3d Cir.1988) (granting new trial when verdict contrary to the great weight of evidence); 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2539 at 608 (2d ed. 1971) (court may grant new trial when verdict is against the great weight of the evidence, even when there is insufficient basis for granting judgment n.o.v.)
 In addition, as I shall discuss, even these new requirements were met in this thoroughly presented case. Even on the legal and evidentiary standards adopted by the panel majority, there is not sufficient basis for reversal of this jury verdict.
 B
 The Trial
 The patented invention of Jacob H. Malta is a musical handbell that can be rapidly adjusted so that the bell tone is changed "on the fly" during performance of a musical composition. It is not a complicated device.
 Because of the rapid adjustability of the bells that Malta invented, performers have achieved musical effects not previously available in the old, indeed ancient, art of handbell music. After this handbell was produced, composers of handbell music adopted a new system of notation for handbell scores. Music for handbells was now written that could not have been performed before. Patent validity was conceded at trial.
 The patent drawing shows the Malta bell:
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 7
 Claim 3, the only claim at issue, is directed to the entire bell, as discussed infra. The rotation of the clapper to change the striking surface, thereby changing the bell tone, was well known. The novel contribution of the Malta bell to the art was the mechanism for rapid adjustment of the clapper during performance; that aspect is not here challenged. The issue on this appeal is the jury verdict of equivalency, a verdict that required the jury to consider certain known, interchangeable clapper structures.
 
 
 8
 Infringement is a question of fact, Intervet America, Inc. v. Kee-Vet Laboratories, Inc., 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989), as is the question of equivalence, Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 331 (1950); Radio Steel & Mfg. Co. v. MTD Products, Inc., 731 F.2d 840, 847, 221 USPQ 657, 662 (Fed.Cir.), cert. denied, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984). At the trial extensive evidence was adduced on the issues both of literal infringement and infringement in accordance with the doctrine of equivalents. These questions are the province of the jury. Royer v. Schultz Belting Co., 135 U.S. 319, 325, 10 S.Ct. 833, 835, 34 L.Ed. 214 (1890); Carver v. Hyde, 41 U.S. (16 Pet.) 513, 520, 10 L.Ed. 1051 (1842); Sun Studs, Inc. v. ATA Equipment Leasing, Inc., 872 F.2d 978, 986, 10 USPQ2d 1338, 1345 (Fed.Cir.1989); Perkin-Elmer, 732 F.2d at 900, 221 USPQ at 678. The jury found, inter alia, that claim 3 of the Malta patent was not literally infringed, but was infringed under the doctrine of equivalents. Infringement of claim 3 is the only issue on appeal.
 
 
 9
 Following is claim 3, clause by clause in accordance with the presentation at trial. Beneath each clause is a summary of the evidence of infringement as to each claim element. The evidence was methodically presented:
 
 
 10
 3. A handbell comprising in combination: a bell having a generally closed end;
 
 
 11
 1. photograph of disassembled parts of bell with transparent overlay of claim text for this element
 
 
 12
 2. color drawing highlighting this element in accused bell
 
 3. explained by witness
 4. no contradictory evidence
 
 13
 5. actual bells were shown and handed to jury
 
 
 14
 6. this element was known in prior art bells
 
 
 15
 a clapper assembly adapted to be removably carried within said bell and centrally of the closed end thereof,
 
 
 16
 1. photograph of disassembled parts of bell with transparent overlay of claim text for this element
 
 
 17
 2. a second color drawing highlighting this element in accused bell
 
 3. explained by witness
 4. no contradictory evidence
 
 18
 5. this element was known in prior art bells
 
 
 19
 said assembly comprising a clapper shaft having one end pivotally associated centrally of the closed end of said bell and carrying a clapper member at its free extremity,
 
 
 20
 1. photograph of disassembled parts of bell with transparent overlay of claim text for this element
 
 
 21
 2. a third color drawing highlighting this element in accused bell
 
 3. explained by witness
 4. no contradictory evidence
 
 22
 5. this element was known in prior art bells
 
 
 23
 said clapper member comprising a generally circular striker assembly rotatably positioned substantially normal to said clapper shaft
 
 
 24
 1. photograph of disassembled parts of bell with transparent overlay of claim text for this element
 
 
 25
 2. a fourth color drawing highlighting this element in accused bell
 
 3. explained by witness
 4. no contradictory evidence
 
 26
 5. this element was known in prior art bells
 
 
 27
 and including a plurality of striking buttons positioned in opposed pairs around the outer periphery thereof and wherein each pair of buttons has a different degree of hardness;
 
 
 28
 1. photograph of disassembled parts of bell with transparent overlay of claim text for this element
 
 
 29
 2. a fifth color drawing highlighting this element in accused bell
 
 3. explained by witness
 
 30
 4. no dispute as to presence of opposed pairs of striking elements positioned around the outer periphery of the clapper, each pair having a different degree of hardness
 
 
 31
 [the only dispute at trial was the equivalency of the striking buttons of the claim clause and the felt/plastic striking surfaces of the accused bells]
 
 
 32
 5. equivalency of the striking surfaces was explained and demonstrated using accused bell
 
 
 33
 6. both forms of striking surfaces were illustrated as alternatives in the patent in suit
 
 
 34
 7. both forms of striking surfaces were known in the prior art
 
 
 35
 means on said clapper assembly coacting with said rotatable striker assembly for permitting rotation of said striker assembly relative to said clapper shaft for selectively positioning desired pairs of buttons in striking relation to said bell;
 
 
 36
 1. photograph of disassembled parts of bell with transparent overlay of claim text for this element2. a sixth color drawing highlighting this element in accused bell
 
 3. explained and demonstrated by witness
 4. demonstrated in videotaped performance
 5. no contradictory evidence
 
 37
 [this was the first new element of the claimed bell; its presence in the accused bells was admitted]
 
 
 38
 and detent means cooperating with said rotatable striker for releasably holding said striker assembly in any preselected position.
 
 
 39
 1. photograph of disassembled parts of bell with transparent overlay of claim text for this element
 
 
 40
 2. a seventh color drawing highlighting this element in accused bell
 
 3. explained and demonstrated by witness
 4. demonstrated in videotaped performance
 5. no contradictory evidence
 
 41
 [this was the other new element; its presence in the accused bells was admitted]
 
 
 42
 Mr. Malta was a principal witness on the question of infringement. He identified each of the elements of the claims, and the corresponding element of the accused bells. The jury was shown 24"' X 30"' photographs of the details of disassembled bells, and Mr. Malta used transparent overlays identifying each part of the accused bells and the corresponding element in each claim.
 
 
 43
 He also testified with the aid of seven 24"' X 30"' drawings for each claim, each drawing highlighting in color a different part of the accused bells, and labelled to show the corresponding element of the claims. From these photographs and drawings, Mr. Malta compared each claim element with the corresponding element in the accused bells. The jury viewed a videotaped musical performance during which Malta stopped the tape to show the patented bells being quickly adjusted by the performers.
 
 
 44
 It was explained to the jury that what was new in Malta's bells was his means for rapidly changing the striking surfaces during a musical performance. Mr. Malta demonstrated how the clapper is rotated during performance and click-locked into the desired striking position: the new elements of the claimed combination. It was not disputed by Schulmerich that these new elements, as well as all the other elements of claim 3 except the form of the striking surfaces, were literally present in the accused bells.
 
 
 45
 Malta demonstrated to the jury how the different striking surfaces produced different tones. He explained to the jury that it was not new to use striking surfaces of different hardness on the bell clapper, in order to change the bell tone. The jury was shown bell clappers two hundred years old having this feature. Malta also explained that it was not new to use clappers having the striking surfaces illustrated in the patent; that these striking surfaces were known. The issue before the jury was simply the equivalence of the two sets of known striking surfaces that were described in the patent. There was substantial evidence of the equivalence of these striking surfaces. I shall discuss some of this evidence, for the panel majority does not.
 
 
 46
 For example, the patent specification shows the felt and plastic striking surfaces that are used in the accused bells, and also shows the button striking surfaces of claim 3. The patent specification discusses their relationship, and explains that the varying hardness of these surfaces varies the tone of the bell. These embodiments are illustrated in Figures 3 and 7 of the patent:
 
 
 47
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 Schulmerich did not dispute that the accused bells use the embodiment of Figure 3. In evidence was the patent specification, which describes the Figure 3 striking surfaces as follows:
 The striking surface of the ring 64 [of the clapper] may offer different hardness strike surfaces 68 therearound for varying the tone. This is accomplished by drilling or molding relief portions 69 adjacent the surfaces. A third opposed pair of striking surfaces may also be provided wherein felt or some other relatively soft material is applied to opposed striking surfaces of the clapper 26. In this embodiment, the clapper will offer three opposed areas of strike, each with a different impact effect and available according to its position relative to the plane of swing of the clapper 26.
 The specification also discusses the striking buttons of Figure 7, and relates them to the Figure 3 embodiment and to the invention as a whole:
 Opposed pairs of buttons 82 are of the same hardness and each opposed pair is of a different hardness to accomplish the same results as described in connection with the clapper shown in FIG. 3. It is apparent that other deviations may also be used without departing from the spirit of my invention which comprehends a manually adjustable clapper having a plurality of strike portions, in opposed relation and of different hardness, to selectively produce a variety of tonal effects.
 I emphasize that the striking surfaces used in the Schulmerich bells, the only claim element for which equivalence was at issue, were described, as well as pictured, in the patent.[3] The patent specification describes how the hardness of the "strike portions" is varied, and how these alternative embodiments function to change the tone of the bell.
 Malta explained all this at trial, with explicit reference to the claimed invention and the accused bells. He testified that the felt striking surfaces in the Schulmerich handbells (shown in Fig. 3 of the patent) function in the same way and with the same effect as the softest pair of buttons (Fig. 7) to produce a soft tone. He testified that the plastic striking surfaces (Fig. 3) and the plastic surfaces with slots (Fig. 3) of the Schulmerich handbells function in the same way and with the same effect as the harder and medium pairs of buttons (Fig. 7), to produce the brilliant and medium tones.
 Malta also explained this correspondence between the striking surfaces of the claimed and the accused bells using a color-highlighted drawing labelled with the relevant claim clause. For example:
 Q: Would you make that clear as to what the structure is in the Schulmerich bell that corresponds to the buttons that are recited in the claim?
 A: All right. The structure is these portions of the clapper, in this case the opposed felt pieces, and adjacent thereto on each side these elliptical spots of green, indicating that there are additional pairs of opposed striking surfaces.
 Q: Striking surfaces. Would you go on with your explanation of how the portion illustrated in color in the exhibit corresponds to the claim language?
 A: Right. The--as I described, we have a plurality of buttons, there's three sets, buttons or the equivalent thereof, and they are in opposed pairs around the periphery. We've described how they are related to these indexing slots in the underside of the brass clapper insert, and each pair has a different degree of hardness, we've described that. Here again we have felt which produced a soft impact sound. Here, this would be in relation to this slotted portion here where we have a slot in the core and at 180 degrees another slot, that would be the medium impact position. And then the lowermost one would be the--this one opposed to this where we have a solid plastic material in the impact plane producing a brilliant sound.
 Malta here, and elsewhere, did compare each pair of striking surfaces, and did explain to the jury the way the various striking surfaces changed the tone of the bell. As further evidence of the equivalence of the striking surfaces, it was explained to the jury that the prior art '574 patent describes the same felt, plastic, and slotted plastic surfaces as were shown to be present in the accused bells, as were shown to be pictured in Figure 3 of the patent in suit, and as were discussed by Malta in his testimony. A 1902 catalogue of prior art bells, about which Malta also testified, shows "pins" of different materials on a rotatable clapper. Mr. Malta explained and demonstrated to the jury that the use of striking surfaces made from material of varying degrees of hardness was known in the prior art; and that the use both of striking buttons and striking surfaces made of felt, plastic, and plastic with slots, to produce varying degrees of hardness, was known in the prior art. This comports with the holding in Graver Tank, 339 U.S. at 609, 70 S.Ct. at 856, 85 USPQ at 331, that proof of equivalence "can be made ... by the disclosures of the prior art".
 The panel majority, holding that there was insufficient evidence of equivalency to present the issue to a jury, appears to concentrate its attack on Malta's evidence of the "way" aspect of the function/way/result test of Graver Tank. The panel majority finds an inadequate showing of why the elements work in the same way.
 Following is another example of the testimony in which Malta explained and demonstrated the "way" the bells work, by rotating the clapper and aligning the surfaces of varying degrees of hardness in the striking plane. The witness also explained "why", describing the felt surfaces, the slotted plastic, and the solid surfaces:
 Q: [E]xplain to the jury what you mean about changing the brightness or color. Demonstrate it....
 A: May I demonstrate it?
 Q: ... you will ... certainly, certainly.
 A: All right. Right now this clapper is aligned so that there are felt surfaces in the striking plane. The clapper is restricted in its motion so that it will only move through one plane, and it's going to be moving toward you. I'll ring it now. (Rings a bell.) There we've got a rather soft, mellow sound.
 I turn it to the next indexing spot and this spot are the opposed surfaces contain cord in, molded in slots. These slots will allow the plastic surface to give, to compress. And in so doing the tone that results will be brighter because we do not have felt covering the surface, felt being softer, but it will not be as bright as it will in the next position which we'll use opposed surfaces where there are no cord slots. (Rings a bell.)
 And now I'll dampen the bell and I've turned it already to the third position which utilizes solid surfaces and strike it. (Rings a bell.) And again we've got a brighter sound. I'll run through it now quickly. (Rings a bell.)
 The jury was not "left to its own imagination", as my colleagues hold, on the "function, way, and result" determination of equivalency. Although the panel majority states that Malta presented only "offhand" and "conclusory" evidence, that statement does not accord with the record.
 Malta's testimony on infringement took most of three days. Each claim clause was compared with its embodiment in the accused handbells, using real, demonstrative, and testimonial evidence, for literal infringement and for equivalency. There was substantial evidence of the function, way, and result of the striking surfaces of the accused handbells compared with the striking surfaces of the claimed invention. There was substantial evidence not only as to this specific claim element but also as to the invention as a whole, leaving no theory of equivalency uncovered. Compare Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 4 USPQ2d 1737 (Fed.Cir.1987) (en banc ), cert. denied, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988) (requiring presence of every claim element, literally or by an equivalent) with Graver Tank, 339 U.S. at 607-08, 70 S.Ct. at 855-56, 85 USPQ at 330 (equivalency is determined of the invention as a whole).
 Looking first at the invention as a whole, there was substantial evidence that the accused bell functioned by instantaneous hand adjustment of the clapper, as does the claimed bell; changing the striking surfaces of varying hardness, thereby changing the tone of the bell. As to way, there was substantial evidence of how the tone is changed on rotation of the clapper, due to the change in hardness of the surface in the striking plane, for the claimed and the accused bells. As to result, there was substantial evidence of the rapidly adjustable changes in tone of the accused bell, as in the claimed bell, to obtain soft, medium, and hard tones.
 The jury was instructed that in order to find infringement every element of the claim or the equivalent of every element must be present in the accused device.[4] Looking at the specific claim element for which equivalency was at issue, i.e., the "plurality of striking buttons in opposed pairs having different degrees of hardness", again there was testimonial, documentary, and real evidence of the function, way, and result that characterize this element in the accused bells, and equivalency to the function, way, and result that characterize the corresponding element of the claim. Malta presented substantial evidence that the function of the opposed pairs of felt/plastic striking surfaces in the Schulmerich bells, and of the opposed pairs of striking buttons of the claim, is to produce varying tones on striking the bell. Using physical and documentary evidence, Malta testified that the felt, solid plastic, and slotted plastic surfaces of the accused bells "function like buttons".
 Malta also presented substantial evidence that the way the striking surfaces produce varying tones is by their varying degrees of hardness, in the accused bells and in the claimed invention. He pointed to the accused striking surfaces, using a color-highlighted drawing, and testified that "these are the three positions that I described earlier on the clapper that produce the hard, medium and soft", and that "each pair has a different degree of hardness." I quoted ante Malta's discussion of how slots in the plastic surface affect the tone:
 These slots will allow the plastic surface to give, to compress. And in so doing the tone that results will be brighter because we do not have felt covering the surface, felt being softer, but it will not be as bright as it will in the next position which we'll use opposed surfaces where there are no cord slots.
 The Malta patent, in evidence and the subject of testimony before the jury, also describes the way both sets of striking surfaces function; see Figures 3 and 7 pictured ante and the description in the patent specification.
 Although the panel majority now holds that Malta was required to explain how and why these known surfaces work in the way that they were known and shown to work, at least when trial is to a jury, Schulmerich did not raise this point; not on motion for directed verdict, not in its requested jury instructions, not on motion for judgment n.o.v., and not in its appellate brief. As a criterion of equivalency, it is unprecedented.
 However, as I have stated, Mr. Malta did explain how and why. He explained that felt is "softer" than plastic, and he explained that the slots "allow the plastic to give, to compress", producing a less brilliant sound than the solid plastic surfaces. He was not required to explain "why". An inventor need not know the why of the scientific and technologic principles underlying an invention. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 435-36, 31 S.Ct. 444, 447, 55 L.Ed. 527 (1911); Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1570, 219 USPQ 1137, 1140 (Fed.Cir.1983). For example, in Graver Tank it was not required that the patentee explain why manganese and magnesium have similar properties in the claimed composition--an explanation requiring an understanding of atomic structure and chemical forces. Rather, it was the observed fact of the similar properties when used in the claimed composition that was legally significant.[5]
 Malta also provided substantial evidence that the resulting change of tones is the same, for the striking surfaces of the accused bells and those of claim 3. He testified to the "different impact sounds" and "different tonal effect" that result. All of this evidence was specific to the issue of equivalency of the striking buttons and the felt/plastic/slotted plastic surfaces.
 The evidence was thorough and, if anything, redundant. It is hard to imagine what more would have been appropriate. Malta surely met that threshold quantity and quality of evidence required for consideration by the jury of the factual question of equivalency. A reasonable jury viewing this evidence could have found that these known alternative embodiments were equivalent.
 The fundamental right of litigants to a jury trial is impugned by the creation of new evidentiary rules after the trial is over. "[T]he procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied." Speiser v. Randall, 357 U.S. 513, 520, 78 S.Ct. 1332, 1339, 2 L.Ed.2d 1460 (1958) (misplacement of burdens of proof and persuasion violated procedural safeguards). By holding that Malta was required to present evidence of "why" because the factfinder was a jury, the majority creates a new substantive and procedural rule of uncertain soundness, as well as treading upon due process.
 C
 The Jury Instructions
 The parties agreed on the law to be applied. There was no objection to the jury instructions. Agreed instructions are subject to the general rule that failure to object will bar a later challenge to the law that was applied. Fed.R.Civ.P. 51:
 No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.
 See also, e.g., United States v. 78.40 Acres of Land, 384 F.2d 746 (3d Cir.1967) (counsel had no suggestions or objections to the jury charge, thus waiving assignment of error); Allen Organ Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 1566, 5 USPQ2d 1769, 1777 (Fed.Cir.), cert. denied, 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988) (agreement without objection to the jury charge is agreement to the law the jury is to apply). This is not the rare case where appellate intervention on the basis of plain error in an instruction is "necessary to prevent a miscarriage of justice". 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2558 at 672 (2d ed. 1971).
 Schulmerich did not request jury instructions on any of the points on which the panel's majority opinions now rely. In instructing the jury on infringement in terms of the doctrine of equivalents, the trial court used the classical words of Graver Tank, 339 U.S. at 609, 70 S.Ct. at 856, 85 USPQ at 331; and also explained the law of equivalency in light of other factual aspects of equivalency that had been raised at the trial:
 Infringement under the Doctrine of Equivalents may exist if the accused handbells perform substantially the same function in substantially the same way so as to obtain substantially the same results as the claimed invention. I'll repeat that.
 Infringement under the Doctrine of Equivalents may exist if the accused handbells perform substantially the same function in substantially the same way so as to obtain substantially the same results as the claimed invention.
 What constitutes equivalency must be determined considering the context of the patent, what we're talking about, the prior art and the particular circumstances of the case. The smaller the advance over the prior art, that is, what's in the prior field, the narrower the range of available equivalents.
 Also, it must be kept in mind that the Doctrine of Equivalents has certain limits. For example, the doctrine may not be used to support an interpretation that would resurrect or reopen subject matter surrendered or dropped during prosecution of the patent application or subject matter that is in the realm of public information.
 Additionally, the scope of the patent may not be expanded or extended so far that they've become invalid or meaningless in light of the scope of the prior art.
 Also, equivalents must be established with respect to the claims of the patent, not for commercial purposes for which the products are used.
 In applying the Doctrine of Equivalents, remember that infringement requires that each and every element of an asserted claim or the equivalent of the element must be present in the accused device.
 Schulmerich's counsel said: "I think it was a nice charge."
 Neither member of the panel majority directs criticism to the jury instructions.
 It must be assumed that the jury followed the court's instructions. Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 604, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985). A reasonable jury, applying these instructions in light of the evidence, could have found infringement of claim 3 under the doctrine of equivalents. The record shows that there was substantial evidence on which the jury could rely to find equivalency. See Kinnel, 850 F.2d at 961-62 (verdict must be affirmed if there is the minimum amount of evidence on which the jury could rely, giving the nonmovant the benefit of all reasonable inferences).
 I can not discern, and the panel majority does not explain, how the jury was "put to sea without guiding charts". In addition to the well-organized testimony, there were the actual bells, the photographs, the charts, the videotape, the description and drawings in the patent, and the prior art. There were examination and cross-examination, opposing witnesses, and experts. All of the exhibits were taken to the jury room. These bells are simple devices. The majority's criticism that this jury was "left to its own imagination" on the technical and legal issue of equivalency is belied by the record. Any legal gap was waived by failure to object to the jury instructions, McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 768-69 (3d Cir.1990); and any technical gap must be measured by the established standard for review of jury verdicts. Denneny, 407 F.2d at 439 (the jury verdict must be sustained unless the record "is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief"). On the correct standard, the jury verdict must be upheld.
 D
 The New Rules for Jury Trials
 Eight months after this jury verdict was rendered this court held, in Lear Siegler, Inc. v. Sealy Mattress Co., 873 F.2d 1422, 10 USPQ2d 1767 (Fed.Cir.1989), that proof of equivalency requires a different evidentiary standard and enlarged attorney explanation when a jury is the trier of fact, as compared with trial to the court. Both members of the panel majority rely on this holding, or at least on the dictum to similar effect in Nestier, see n. 2, supra.
 As I have discussed, the Lear Siegler requirements of "particularized testimony and linking argument" in jury trials are in conflict with Graver Tank, 339 U.S. at 609, 70 S.Ct. at 856, 85 USPQ at 331, wherein the Court made clear that proof of equivalence "can be made in any form". If, as both members of the panel majority insist, the Lear Siegler requirements are not new, their unprotested absence from the jury instructions, and from every other aspect of the trial, means that they were waived. And this panel's new requirement that there be evidence of "why" as well as "function, way, and result" contravenes the holding of Graver Tank that "equivalence, in the patent law, is not the prisoner of a formula". 339 U.S. at 609, 70 S.Ct. at 856, 85 USPQ at 330.[6]
 The new requirements also conflict with the truism that attorney argument is not evidence, 1 Wigmore On Evidence, § 1(b), at p. 7 (Tillers rev. 1983), and with the further truism that "the required findings are controlled by the court's instructions to the jury", DMI, 802 F.2d at 425, 231 USPQ at 279. There is also conflict with the rule that the appellate court must view the evidence and draw reasonable inferences in the light most favorable to the party with the verdict, Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 921 (3d Cir.1986); and conflict with the proscription against appellate fact-finding:
 [C]onflicting evidence which could reasonably lead to inconsistent conclusions will not justify a judgment notwithstanding the verdict or a directed verdict. It is the function of the trier of fact alone, the jury in this instance, to evaluate contradictory evidence and to draw inferences therefrom.
 Fireman's Fund Ins. Co. v. Videfreeze Corp., 540 F.2d 1171, 1178 (3d Cir.1976), cert. denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977) (citations omitted).
 An additional conflict with precedent arises in the panel majority's treatment of expert testimony. Although Malta testified as an expert, the majority rejects that testimony as insufficient under its new approach to jury trials. Compare, e.g., Symbol Technologies, Inc. v. Opticon, Inc., 935 F.2d 1569, 1574-76, 19 USPQ2d 1241, 1245-46 (Fed.Cir.1991), wherein this court held that under the Federal Rules of Evidence an expert's testimony on infringement, including claim charts, was sufficient to establish a prima facie case of infringement. See Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627-28, 64 S.Ct. 724, 728-29, 88 L.Ed. 967 (1944) (where trial court admits opinion testimony, it is for jury to decide what, if any, weight to assign it). Here, Malta's testimony is being held insufficient as a matter of law, for failure to meet the majority's retrospectively imposed requirements for jury trials.
 Today's paternalistic ruling that more and different evidence and argument are required when infringement is tried to a jury diverts patent jury trials from the mainstream of the law, a place assured by history and once accepted by the Federal Circuit:
 So long as the Seventh Amendment stands, the right to a jury trial should not be rationed, nor should particular issues in particular types of cases be treated differently from similar issues in other types of cases.
 Connell v. Sears, Roebuck, 722 F.2d at 1547, 220 USPQ at 197.
 [I]t is appropriate to affirm unequivocally that patent litigants are entitled to neither a greater nor a lesser but to the same right to a jury trial, under the same governing considerations, as are all other litigants.
 SRI International v. Matsushita Electric Corp. of America, 775 F.2d 1107, 1127, 227 USPQ 577, 590 (Fed.Cir.1985) (Markey, C.J., additional views). In Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1515, 220 USPQ 929, 937 (Fed.Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984), this court stated:
 There is, of course, no reason for considering patent cases as somehow out of the mainstream of the law and rules of procedure applicable to jury trials for centuries under our jurisprudence.
 The retroactive imposition of these new rules and resultant reversal of the jury verdict also contravenes the guidance of Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (discussing retroactive imposition of law).
 This court is changing not only the rules governing jury trials, but the rules of appellate review. The mischief is well illustrated in today's post hoc, retrospectively imposed, micro-management of the jury trial process. It is inimical to due process, for litigants and trial judges will not know when the Federal Circuit will decide, on appeal, that a particular issue required more explanatory testimony and attorney argument at a jury trial than either the parties or the trial judge deemed necessary, or the law required.
 The role of the jury in civil litigation is not ours to change. See H.T. Markey, On Simplifying Patent Trials, 116 F.R.D. 369, 370 (1987):
 There is neither reason nor authority for employing in a patent trial procedures and practices different from those employed in any other civil trial. Indeed, reason and authority mandate the contrary.
 On appellate review, after the motion for judgment n.o.v. has been made and decided, the appellate court shall "apply the same standard as the trial court." Simone v. Golden Nugget Hotel and Casino, 844 F.2d 1031, 1034 (3d Cir.1988).
 The standards for granting a motion for judgment n.o.v., on which the constitutionality of such action depends, are the same as those governing the direction of a verdict. Thus, the motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is sufficient conflicting evidence, or insufficient evidence to conclusively establish the movant's case, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury's verdict. This approach governs the appellate courts as well as the trial courts.
 5A Moore's Federal Practice p 50.07 (2d ed. 1985) (footnotes omitted).
 It is incorrect to hold that the motion for judgment n.o.v. converts appellate review of a jury verdict to simple review of the trial judge's decision, as if there were no jury and no verdict.[7] See Boyle v. United Technologies Corp., 487 U.S. 500, 513-14, 108 S.Ct. 2510, 2518-19, 101 L.Ed.2d 442 (1988) (it was error for the appellate court to decide on its own whether the evidence was sufficient; the necessary inquiry was whether a reasonable jury could, on the proper formulation of the defense, have found for the plaintiff on the facts presented); Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 695-96, 82 S.Ct. 1404, 1408-09, 8 L.Ed.2d 777 (1962) (criticizing appellate court for reviewing "the correctness of the judgment" entered on the jury verdict, instead of following the rules for review of jury verdicts). "[J]udges ... are precluded from reexamining facts tried by a jury". Davis v. Omitowoju, 883 F.2d 1155, 1165 (3d Cir.1989).
 Similarly on motion for directed verdict, a motion whereby the trial judge must decide whether to withhold the case from the jury:
 The Court of Appeals was, of course, bound to view the evidence in the light most favorable to [the non-movant] and to give it the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn.
 Continental Ore Co., 370 U.S. at 696, 82 S.Ct. at 1409 (1962). The Court quoted Professor Moore's statement that
 "the appellate court must consider the evidence in its strongest light in favor of the party against whom the motion for directed verdict was made, and must give him the advantage of every fair and reasonable intendment that the evidence can justify."
 Id. at 696 n. 6, 82 S.Ct. at 1409 n. 6, quoting 5 Moore's Federal Practice § 2316 (2d ed., 1951).
 Nor can the right to jury trial of this factual issue be extinguished because the doctrine of equivalents was "judicially devised to do equity". The jury has historically been charged with the factual inquiry of equivalency:
 The question whether one thing is a mechanical equivalent for another is a question of fact for the jury, on the testimony of experts, or an inspection of the machines; and it is an inference to be drawn from all the circumstances of the case, by attending to the consideration, whether the contrivance used by the defendant is used for the same purpose, performs the same duties, or is applicable to the same object, as the contrivance used by the patentee.
 G. Curtis, A Treatise on the Law of Patents, ch. VIII, § 310 at p. 405 (4th ed. 1873). This court, by retroactively imposing new requirements for proving infringement, then re-finding the facts under the guise of determining whether these new requirements were complied with, has denied this litigant's historic right.[8] I do not lightly charge my colleagues with so serious a breach; yet the Supreme Court has admonished:
 Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.
 Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935).
 Applying the correct standard of appellate review, the jury's verdict must be affirmed. The panel majority has adopted an improper view of the jury process, in contravention of fundamental law and the precedent of the Supreme Court, the Third Circuit, and the Federal Circuit. Thus, respectfully, I dissent.
 1 The complaint also included claims other than patent infringement against Schulmerich and other named defendants, Ronald O. Beach, Kelly-Michener, Inc., and The Handchime Co. The case was subsequently bifurcated into patent and non-patent portions.
 2 Graver Tank and Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (85 USPQ 328) (1950).
 3 Nestier Corp. v. Menasha Corp.-Lewisystems Div., 739 F.2d 1576, 222 USPQ 747 (Fed.Cir.1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985).
 4 In this context, the word "element" refers to a limitation of the claim, and not necessarily to a component of the claimed device. See Corning Glass, 868 F.2d at 1259, 9 USPQ2d at 1968.
 5 The dissent has attempted to draw out the function, way, and result achieved by the accused and claimed devices from the testimony quoted in the dissenting opinion. However, its conclusion as to what those functions, ways, and results are does not come from the testimony itself but from Malta's appeal brief and from its own conjecture. While Lear Siegler does not go so far as to require recitation of the magic words "function", "way", and "result", we think that it at least requires the evidence to establish what the function, way, and result of both the claimed device and the accused device are, and why those functions, ways, and results are substantially the same.
 1 The Federal Circuit follows the rule that the procedural law of the trial court is not affected by the path of appellate review, thereby avoiding unnecessary conflict and confusion in the trial courts of the nation. Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1574-75, 223 USPQ 465, 471 (Fed.Cir.1984). For similar reasons, the Federal Circuit applies the substantive law of the regional circuit to matters not unique to patent law. Atari, Inc. v. JS & A Group, Inc., 747 F.2d 1422, 1438-40, 223 USPQ 1074, 1086-87 (Fed.Cir.1984) (en banc ).
 Thus we look to Supreme Court and Third Circuit precedent for explication of the standard of review of jury verdicts, see Newell Companies, Inc. v. Kenney Mfg. Co., 864 F.2d 757, 761 n. 1, 9 USPQ2d 1417, 1420 n. 1 (Fed.Cir.1988), cert. denied, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989), taking note that this standard does not vary significantly among the circuits, see 5A Moore's Federal Practice p 50.07 (2d ed. 1985), including until today the Federal Circuit.
 2 The panel majority states that Lear Siegler merely repeats an earlier ruling in Nestier Corp. v. Menasha Corp.-Lewisystems Div., 739 F.2d 1576, 222 USPQ 747 (Fed.Cir.1984). Lear Siegler itself described this aspect of Nestier as dictum, for in Nestier the issue of equivalency was waived at trial, and this court held on appeal simply that it was not error for the trial court to have refused to give a jury instruction on an issue that was not before the jury. "In a jury trial, a court should not instruct on a proposition of law about which there is no competent evidence." Nestier, 739 F.2d at 1579, 222 USPQ at 750. Not until Lear Siegler did a panel of this court impose the special rules now relied on.
 3 It is not necessary that alternatives be described in the patent in order to be equivalent. In Graver Tank, 339 U.S. at 609, 70 S.Ct. at 856, 85 USPQ at 331, the Court stated: "An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." In Atlas Powder Co. v. E.I. du Pont de Nemours & Co., 750 F.2d 1569, 1580-81, 224 USPQ 409, 416-17 (Fed.Cir.1984) this court held that the equivalent need not have existed at the time the invention was made, and could itself be a patentable invention. In Malta's case, however, the asserted equivalent was a known alternative, and was described in the patent document; this was explained to the jury.4 This explains why the jury did not find infringement of claim 2, for that claim requires the presence of an additional element (the indexing means) that was not found present in the Schulmerich bells. That finding carries no inference as to equivalency of the claim element here at issue, for there was no prosecution history limiting this claim element. Estoppel applies to claim changes made to overcome prior art; not to the space between broader and narrower claim clauses. See Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 871, 228 USPQ 90, 96 (Fed.Cir.1985) (the reason for the difference in claim scope must be considered).
 The verdict that claim 2 was not infringed was not appealed, and does not carry the "implication" with which the majority seeks to clothe it. There is no presumption or per se rule that a claimed element is not entitled to any equivalents whenever another claim describes that element in broader terms.
 5 I do not fault the inquiring mind that continually asks "why", for each deeper level of inquiry leads to enlarged scientific understanding. Each deeper level of inquiry invokes principles that are more abstract, more fundamental, less specific to the particular practical application, more attuned to pure science. The state of human knowledge is soon strained, as inquiry probes the depths of "why". (Why, for example, is some metal harder than other metal? why is felt softer than plastic? why does compression change the tone? why do slots change the compression?)
 The patent system is directed to practical utility, not to basic research.
 6 The jury instructions that were given used the words of Graver Tank (the three "prongs" of function, way, and result), plus the "all-elements rule" of Pennwalt. The panel majority's statement that "this court has never adopted the three prong approach to determining equivalency of a limitation" will surprise readers of some of our opinions.
 7 The majority errs in interpreting the Graver Tank words that equivalency "is to be decided by the trial court", see majority slip op. at 18, as meaning that this question is not for the jury. The sentences preceding that quoted by the majority are:
 A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court....
 339 U.S. at 609-10, 70 S.Ct. at 856-57, 85 USPQ at 331. Graver Tank was not tried to a jury.
 8 U.S. Const. amend. VII:
 ... no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.