34 F.3d 1080
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SPANCRETE MACHINERY CORPORATION, Plaintiff-Appellant,
v.
RH & M MACHINE CO., Defendant-Appellee.
 No. 93-1415.
 United States Court of Appeals, Federal Circuit.
 Aug. 15, 1994.
 
 Before NEWMAN, PLAGER, and CLEVENGER, Circuit Judges.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 Spancrete Machinery Corporation appeals the decision of the United States District Court for the Eastern District of Virginia, granting judgment as a matter of law to RH & M Machine Company.[1] We reverse and remand.
 
 
 2
 United States Patent No. 4,925,358 (the '358 Patent) is for a "trailerable earth digging apparatus". The invention is a small back-hoe that may be drawn by an automobile or small truck; such back-hoes are useful and economical for tasks that do not require a full sized back-hoe.
 
 
 3
 Patent claims 1 and 12 were at issue at trial. The jury returned special verdicts that claims 1 and 12 were not invalid, that claim 1 was not infringed, and that claim 12 was infringed in terms of the doctrine of equivalents. The jury found that the infringement was not willful, and awarded damages of $12,000. The district court then granted RH & M's motion for judgment of non-infringement as a matter of law, over Spancrete's objection that RH & M had not moved for judgment at the close of all the evidence, as required by Fed.Rule Civ.P. 50. Spancrete appeals as to claim 12, requesting reinstatement of the jury verdict of infringement and other appropriate relief.
 
 Discussion
 
 4
 Spancrete argues that the jury verdict of infringement of claim 12 was supported by substantial evidence, and was improperly reversed by the trial court. The parties stipulated that all but two limitations of the claimed back-hoe were embodied literally in the accused back-hoe. Thus the evidence at trial was focused on the following clauses of claim 12:
 
 
 5
 a digging stabilizing means connected to said frame and including rear and front ground engaging stabilizers connected to the frame ... for digging with said three point stabilizing means in ground engagement
 
 
 6
 (hereinafter the "digging stabilizing means"); and
 
 
 7
 a bucket secured to the outer end of said arm assembly, said arm assembly having a position to establish a balanced loading on the frame about said laterally spaced back wheels to permit convenient moving of the apparatus on-site
 
 
 8
 (hereinafter the "balanced loading" limitation).
 
 
 9
 The appellate tribunal, like the trial court, reviews the evidence to ascertain whether, on the record as a whole, there was substantial evidence to support the jury verdict. Duke v. Uniroyal, Inc., 928 F.2d 1413, 1417 (4th Cir.), cert. denied, 112 S.Ct. 429 (1991); Gill v. Rollins Protective Services Co., 773 F.2d 592, 594-95 (4th Cir.1985).[2] In conducting this review the evidence must be viewed in the light "most favorable to the party who secured the jury verdict". Sun Studs, Inc. v. ATA Equip. Leasing, Inc., 872 F.2d 978, 985, 10 USPQ2d 1338, 1344 (Fed.Cir.1989) (quoting 5A Moore's Federal Practice p 50.07 at 50-70 (1988)); Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891 (4th Cir.1980).
 
 
 10
 To establish error in the grant of a motion for JNOV, "an appellant need only show that there was substantial evidence to support the jury's findings and that those findings can support the jury's legal conclusion." Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1571, 1 USPQ2d 1081, 1085 (Fed.Cir.1986). It is irrelevant that the evidence could also support a contrary verdict, when a reasonable jury could have reached the verdict that was reached by this jury. Gill v. Rollins, 773 F.2d at 594 n. 1.
 
 The Digging Stabilizing Means
 
 11
 At the trial witnesses testified, counsel explained, and the trial court instructed that infringement with respect to this aspect is determined by comparing the structure that performs the digging stabilizing function in the accused back-hoe with the corresponding structure described in the patent, and determining if the structures are the same or equivalent. The court instructed the jury as follows:
 
 
 12
 Now, you'll note that both asserted claims in the patent define a component parts in terms of a, quote, means for, close quotes, performing a certain function. The law calls these means plus function claims. These claims must be interpreted to cover the corresponding structure, material or acts described in the specification, as well as any equivalent structure, material or acts.
 
 
 13
 Neither side assigns error to this instruction, which was reinforced in the explanation of the law presented in the arguments of counsel and the testimony of witnesses for both sides.
 
 
 14
 Instruction on the doctrine of equivalents was also given, and included the following:
 
 
 15
 If literal infringement is not established as to any particular claims, Spancrete bears the burden of proving infringement of that claim under the doctrine of equivalents by a preponderance.
 
 
 16
 The test to determine equivalence is whether the GO-FOR DIGGER II performs substantially the same function and substantially the same way to produce substantially the same result compared to the claimed invention and its component parts.
 
 
 17
 Again, equivalency was a theme throughout the trial, and was the subject of testimony and argument.
 
 
 18
 Although infringement of a means-plus-function claim by a device that contains an equivalent structure to that shown in the specification is viewed as literal infringement, not infringement under the doctrine of equivalents, Texas Instruments, Inc. v. Int'l Trade Comm'n, 805 F.2d 1558, 1562, 231 USPQ 833, 835 (Fed.Cir.1986), and the district court so recognized, we do not discern reversible error in the omission of this nuance from the jury instructions. The jury verdict that claim 12 was not infringed literally, but was infringed under the doctrine of equivalents, could have been based on either the digging stabilizing means or the balanced loading limitation. The jury verdict must be sustained if there was any reasonable basis for the verdict.
 
 
 19
 It was not disputed that the accused device contained "rear and front ground engaging stabilizers connected to the frame" and that there was a "three point stabilizing means", as claim 12 requires. It was also undisputed that the structure that performed this function in the accused device was not identical to the structure illustrated in the patent specification. Thus the question of equivalency of these structures was the appropriate analytic approach, and is presumed to have been determined by the jury in accordance with the court's instructions.
 
 
 20
 In granting RH & M's post-verdict motion for judgment as a matter of law, the district court held that Spancrete had not proven equivalency between the "way" the digging stabilizing means of the accused back-hoe worked and the way the digging stabilizing means described in the specification worked. The way devices work is a question of fact, as is the question of whether the ways are equivalent. Spancrete points to the testimony of witnesses for both sides, to models of the back-hoes that were in evidence at the trial, and a videotape demonstrating the way these structures perform the digging stabilizing function. The jury was shown RH & M's machine manual, which Spancrete described, without contradiction, as a copy of Spancrete's machine manual. There is no assertion of a lack of technical explanation or jury understanding of the way the digging stabilizing structure worked in the accused and the patented back-hoes. The district court made no finding to this effect.
 
 
 21
 In granting RH & M's motion, the district court did not review the evidence concerning the structures of the accused and the claimed digging stabilizing means, or explain why they could not have been found to be equivalent by a reasonable jury. Indeed, the district court did not hold that there was not substantial evidence to support the jury's verdict. The district court explained its ruling in its reconsideration decision, stating that Spancrete had not provided "particularized testimony and linking argument" as to the "way" aspect of equivalency, citing Lear Siegler Inc. v. Sealy Mattress Co., 873 F.2d 1422, 10 USPQ2d 1767 (Fed.Cir.1989), and Malta v. Schulmerich Carillons, Inc., 952 F.2d 1320, 21 USPQ2D 1161 (Fed.Cir.1991) cert. denied 112 S.Ct. 2942 (1992), as requiring such testimony and argument.
 
 
 22
 However, as was stated in Malta v. Schulmerich Carillons, "this court has never adopted the three prong [function, way, result] approach to determining equivalency of a limitation ". 952 F.2d at 1326, 21 USPQ2d at 1165. The court explained that "while comparison of function/way/result is an acceptable way of showing that structure in an accused device is the 'substantial equivalent' of a claim limitation, it is not the only way to do so". Id.
 
 
 23
 The district court acknowledged Malta's reminder as to the law, but the court neither followed Malta nor explained how the evidence at trial was inadequate to show the way the digging stabilizing function was performed. The court did not point to any evidentiary gaps, or suggest that there was unusual complexity of the technology or any other reason why the evidence and argument presented were inadequate to explain the way the accused and patented structures worked.
 
 
 24
 We have often said that patent cases are not, by virtue of their technological subject matter, removed from the mainstream of time-tested trial procedures. The question of equivalent structure is a question of fact, and the verdict warranted review on its factual merits. The court can not act on its own view of the evidence, as if there had been no jury. Indeed, the jury was not instructed that there is a special standard of evidence and argument of the way the devices worked in order for the jury to find infringement by equivalency. The jury was instructed only that infringement must be proved by a preponderance of the evidence. The jury verdict must be sustained if there is substantial evidence on the record as a whole whereby a correctly instructed jury could have reached the verdict that was reached. Duke v. Uniroyal, 928 F.2d at 1417; Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 619, 225 USPQ 634, 636 (Fed.Cir.), cert. dismissed, 474 U.S. 976 (1985); Perkin-Elmer Corp. v. ComputerVision Corp., 732 F.2d 888, 893, 221 USPQ 669, 672 (Fed.Cir.), cert. denied, 469 U.S. 857 (1984).
 
 
 25
 The record contains substantial evidence explaining the structures, their function, and the way they worked. As we have observed, the district court did not mention the videotape, the models, or the testimony of witnesses. When the evidence before the jury is viewed for its probative value and weight, in accordance with the district court's instructions, the jury's finding of infringement with respect to the digging stabilizing means must be sustained.
 
 The Balanced Loading Limitation
 
 26
 The other claim clause at issue required "balanced loading on the frame about said laterally spaced back wheels". Spancrete's witness testified that this clause meant that the loading was balanced on the frame "about" or close to the back wheels, such as within the radius of the back wheels. RH & M's witness testified that the clause meant that the center of gravity is located precisely at the center of the axle connecting the back wheels. Witnesses relied on the prosecution history and the prior art in support of their interpretation.
 
 
 27
 In the prosecution history, Spancrete had distinguished a prior art back-hoe whose center of gravity was located between the two axles, Spancrete stating that the prior art back-hoe lacked the advantage provided by balancing the load about the back wheels, viz., being easily moved by hand. Spancrete's witness testified that this advantage did not require that the center of gravity be located precisely on the rear axle, but that it was manifested when the center of gravity was "about" that location and "substantially at the rear wheels". The witness testified that greater precision was neither required nor available for a back-hoe.
 
 
 28
 Witnesses for both sides testified as to the placement of the center of gravity in the prior art, in the claimed invention, and in the accused back-hoe. The testimony was illustrated with a videotaped demonstration and photographs. Spancrete argued that either literal infringement or infringement by equivalents could be found, depending on the meaning and scope that the jury gave to the term "about said laterally spaced back wheels".
 
 
 29
 The jury was instructed on prosecution history estoppel as follows:
 
 
 30
 Also, when applying the doctrine of equivalents, the claims cannot be construed in a manner inconsistent with any limitations which are added or arguments made during the prosecution in the Patent and Trademark Office to convince the examiner that the claims are patentable.
 
 
 31
 If you find that Spancrete made claim amendments or submitted new claims to narrow the meaning of their claims and to distinguish their invention from the prior art, then Spancrete limited the scope of their claims. Likewise, if you find that Spancrete made arguments to the examiner to convince the examiner to allow Spancrete's patent, then those arguments limit the scope of the claims. This is known as prosecution history estoppel. The doctrine of equivalents, which may broaden the interpretation of claim language, is subject to the limitation of prosecution history estoppel.
 
 
 32
 Neither party assigns error to these instructions.
 
 
 33
 The jury returned a verdict of infringement of claim 12 under the doctrine of equivalents. The verdict form did not state whether one or both of the disputed claim limitations contributed to equivalency.
 
 
 34
 In granting judgment to RH & M as a matter of law, the district court did not review the evidentiary support for the jury's verdict. The court's analysis makes clear that the court decided the case for itself. The district court first found that the center of gravity must be on the axle, not just close to the axle, and also stated "I think the argument on estoppel was also persuasive, and the court accepts that argument, as well, in terms of how the claim should be interpreted."
 
 
 35
 This the court may not do. When fact questions are given to the jury for resolution, on judicial review the evidence is viewed in the light favorable to the jury verdict, Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1580, 24 USPQ2d 1401, 1419 (Fed.Cir.1992), for the question is not how the trial judge would have independently weighed the evidence, but whether there was substantial evidence whereby the jury could have reached the verdict that it reached. As the Court explained in Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35 (1944):
 
 
 36
 Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.
 
 
 37
 There was substantial evidence whereby a reasonable jury could have found that the accused device embodied the balanced loading limitation of claim 12, either literally or under the doctrine of equivalents.
 
 
 38
 The grant of RH & M's post-verdict motion for judgment is reversed, and the jury verdict is reinstated.
 
 
 39
 In view of this disposition on the merits, we do not reach the issue of Federal Rule 50(b).
 
 Summary
 
 40
 Upon correct jury instructions, there was substantial evidence whereby the jury could have reached the verdict that claim 12 was infringed. We reverse the post-verdict judgment in favor of RH & M, and remand with instructions to reinstate the jury verdict, and grant appropriate relief.
 
 
 41
 Taxable costs in favor of Spancrete.
 
 
 
 [1]
 Spancrete Machinery Corp. v. RH & M Machine Co., No. CA92-773-A (E.D.Va. Dec. 4, 1992)
 
 
 [2]
 In procedural matters not unique to patent law the Federal Circuit applies the law of the regional circuit in which the district court resides, in order to avoid imposing special conditions upon established trial procedures. Allen Organ Co. v. Kimball International Inc., 839 F.2d 1556, 1563, 5 USPQ2d 1769, 1774 (Fed.Cir.) cert. denied, 488 U.S. 850 (1988). Thus we look to the precedent of the Fourth Circuit, taking note that no significant divergence on this issue has come to our attention